UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRIAN EDMOND CONLEY,

    Plaintiff,

v.                                                    CASE NO. 6:18-CV-1865-Orl-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## **ORDER**

This is an appeal of the administrative denial of disability insurance benefits (DIB) and period of disability benefits.[1] *See* 42 U.S.C. § 405(g). Plaintiff argues the administrative law judge (ALJ) did not properly weigh the medical evidence. After considering the parties' joint memorandum (doc. 18) and the administrative record, I find the Commissioner's decision is supported by substantial evidence. I affirm.

    *A.*    *Background*

Plaintiff Brian Conley, 49 years old on the date of his administrative hearing, alleged a disability onset date of August 29, 2013, due to an accident on the job. He was working for a pool company, "on a ladder, pulling a pump off of a stack, and the box broke, and I came off the ladder with the pump, and I tore my right shoulder up." (R. 55) Plaintiff has a high school education and an associate's degree in substance abuse counseling. His past work experience is as a handyman, pool repair worker, and counselor. As a counselor, Plaintiff worked as a contractor with the Department of Corrections to counsel detainees with substance abuse issues. He lives alone.

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

Plaintiff alleges disability due to neck and spine impairments, a torn right rotator cuff, asthma, arthritis, carpal tunnel syndrome, ADHD, and depression. He obtained a worker's compensation settlement related to his ladder injury that paid for two shoulder surgeries, but he has no income, no insurance, and no family to help care for him. He testified he is in constant pain, and "[t]he injections, the epidurals, none of those have helped in any way. They don't alleviate any of the pain." (R. 63) He feels "stuck. I've been really stuck. I mean, since this accident, it's kind of like I've been a spiraling effect." (*Id.*)

After a hearing, the ALJ found that Plaintiff suffers from the severe impairments of degenerative disc disease of the cervical spine, right rotator cuff tear, and right brachial plexopathy. (R. 27) The ALJ also found Plaintiff suffers from the non-severe impairments of asthma, osteoarthritis, carpal tunnel syndrome, left-side distal biceps tendon rupture, ADHD, PTSD, substance induced mood disorder, and history of alcohol and cannabis abuse. (*Id.*) The ALJ determined that, before March 31, 2017, Plaintiff was not disabled, because he retained the RFC to perform less than a full range of light work as follows:

> The claimant can occasionally lift and/or carry up to 20 pounds occasionally and 10 frequently. He could sit/stand/walk for up to six hours in an 8-hour workday. The claimant could rarely engage in overhead reaching using his right upper extremity. He could frequently use his right hand for handling/fingering activities, and the claimant had no limitation in regards to feeling [and] using his right hand. The claimant had no postural limitations prior to his established onset date, and the claimant could have occasional exposure to exposed heights, vibrations, and temperature extremes.

(R. 29) The ALJ found that, with this RFC, Plaintiff could perform his past relevant work as a substance abuse counselor. (R. 31)

Beginning on March 31, 2017, however, the ALJ found Plaintiff disabled, because his RFC as of that date deteriorated to less than a full range of sedentary work. (*Id.*) The ALJ based this on the RFC assessment of Wu Zhuge, M.D., Plaintiff's treating physician who opined that Plaintiff

suffers from disabling cervical stenosis. (R. 923-24) Dr. Zhuge reported that Plaintiff's spinal cord is so compressed that, as of March 31, 2017, it was "too dangerous [for Plaintiff] to work." (R. 924) The ALJ decided Plaintiff could not return to his past relevant work and did not have transferable work skills. Consequently, according to the ALJ, there were no jobs Plaintiff could perform in the national economy after March 31, 2017. (R. 31-32)

Lastly, even though Plaintiff has a medical past of in-patient substance abuse rehab, the ALJ determined that Plaintiff's documented substance use is "not a contributing factor material to the determination of disability." (R. 32) The AC denied review. Plaintiff, after exhausting his administrative remedies, filed this action.

    *B.*    *Standard of Review*

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations. These regulations establish a "sequential evaluation process" to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe

impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work.  *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings.  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists."  *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal."  *Keeton*, 21 F.3d at 1066 (citations omitted).

C.  Discussion

1.  *Weight of the medical evidence and Plaintiff's RFC*

Plaintiff does not challenge the ALJ's finding that he is disabled beginning March 31, 2017. Instead, Plaintiff advances one argument: the ALJ improperly weighed the medical evidence when crafting his pre-March 31, 2017, RFC for a limited range of light work.  Plaintiff focuses on the

4

opinions of non-examining orthopedic surgeon Jeff Hansen, M.D., who wrote in September 2017, that Plaintiff should never lift more than five pounds (R. 1042); treating pain management doctor Brian Dowdell, M.D.'s March 2015, opinion on a check-the-box worker's compensation form that Plaintiff cannot perform even sedentary work (R. 962); and consultative psychologist Nancy MacKay, Psy.D.'s opinion in March 2015, that Plaintiff "is likely to have marked difficulty making appropriate work-related decisions." (R. 859) The Commissioner retorts that the ALJ's decision has substantial evidentiary support. The Commissioner also emphasizes that a claimant's RFC is a determination reserved for the Commissioner, not Plaintiff's doctors. I side with the Commissioner and find that substantial evidence supports the ALJ's decision.

Here, the ALJ determined Plaintiff retained the RFC for a limited range of light work, prior to March 31, 2017. In reaching this conclusion, she considered the RFC questionnaire completed by non-examining orthopedist Dr. Hansen, who opined that Plaintiff's "neck, shoulder, upper back pain will preclude sitting, standing, walking w/o breaks every 45 minutes for 15 minutes." (R. 1043) According to Dr. Hansen, Plaintiff can never reach, handle, finger, or push with his right hand. (R. 1044) He concluded that, dating back to Plaintiff's August 2013 workplace accident (four years before Dr. Hansen's opinion), Plaintiff could do less than sedentary work due to nerve damage to his upper extremities, right shoulder pain, advanced cervical spine disc disease, and osteoarthritis. (R. 1048-50) The ALJ assigned Dr. Hansen's opinion little to no weight as it applies to Plaintiff's condition prior to March 31, 2017. This is when Plaintiff's treating physician Dr. Zhuge determined it had become too dangerous for Plaintiff to work (R. 923-24), and the ALJ found Plaintiff disabled. The ALJ stated:

> The undersigned gives little weight to Dr. Hansen's assessment prior to the claimant's treating physician statement of March 31, 2017. The claimant's treating physician, Wu Zhuge, M.D., stated on that date that the claimant suffered from severe cervical stenosis and a compressed spinal cord. Dr. Zhuge stated it [was]

5

too dangerous for the claimant to work at that time, and he indicated that the claimant was unable to work for one hour in an 8-hour workday. The undersigned gives great weight to the assessments and opinions of Drs. Hansen and Zhuge as of March 31, 2017, the established onset date in this case.

(R. 28)

Substantial evidence supports this. First, Dr. Hansen was a non-examining physician who authored his opinion four years after Plaintiff's original injury date. As a one-time medical examiner, his opinion is not entitled to any special consideration by the ALJ. The opinions of examining physicians are given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. § 404.1527(c)(1-5). Of course, a court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Here, the ALJ did not need to articulate good cause for rejecting one-time examiner Dr. Hansen's RFC assessment.

Second, Dr. Hansen's opinion of Plaintiff's RFC speaks to an issue reserved for the ALJ. *See* 20 C.F.R. § 404.1546(c). A claimant's RFC is the most work he can do despite any limitations caused by his impairments. 20 C.F.R. § 404.1545(a)(1). In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which the impairments are consistent with medical evidence. 20 C.F.R. § 404.1545(a)(2),(e). This includes both severe and non-severe impairments for determining if the claimant can "meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, ALJ cannot point to evidence that supports the decision but disregard other contrary evidence). Ultimately, under the statutory and

regulatory scheme, a claimant's RFC is a formulation reserved for the ALJ, who, of course, must support her findings with substantial evidence. *See* 20 C.F.R. § 404.1546(c).

Third, the ALJ assigned more weight to the opinions of two of Plaintiff's treating physicians. The ALJ relied on notes from orthopedist Hani El-Kommos, M.D., who treated Plaintiff from August to December 2014, for a torn left biceps. After surgically repairing Plaintiff's ruptured distal end of his left biceps at the beginning of September 2014, Dr. El-Kommos reported that Plaintiff was "doing very well." (R. 569-70) In fact, by December 2014, Plaintiff had "full recovery. He has full range of motion. I have released him to come back and see me again only if needed." (R. 567) As Plaintiff points out, however, this biceps surgery was on Plaintiff's left arm and occurred after Plaintiff had already had two surgeries on his right shoulder to correct back-to-back rotator cuff tears. Dr. El-Kommos acknowledged this before performing Plaintiff's biceps surgery in September 2014: "Unfortunately, this gentleman had 2 surgeries in reference to his right shoulder. I feel that his deltoid is nonfunctional. . . . He is going to need some assistance at home, as he is basically crippled with his [right] shoulder as well as with his [left] biceps tendon." (R. 572)

Plaintiff argues that – given Plaintiff's pre-existing limitations associated with his right shoulder impairments – the ALJ relied too heavily on Dr. El-Kommos's medical opinion that Plaintiff's left shoulder had fully recovered; in other words, Dr. El-Kommos's observation that Plaintiff had full range of motion in his left shoulder is only half of the story, because his right shoulder "crippled" him. (R. 572) Plaintiff also emphasizes that the ALJ's reliance on the April 2015, RFC assessment of non-examining family practice physician Adrianna Gioia, M.D. – who reviewed Plaintiff's records, including those of Dr. El-Kommos, and opined Plaintiff could

7

perform light work – is in error, because she did not have the benefit of later medical opinions. (R. 139-40)

Even if it was error for the ALJ to assign great weight to Dr. Gioia's opinion (it was not), the ALJ did not rely *solely* on Dr. Gioia's opinion. In addition to Dr. El-Kommos's records, the ALJ found "further support" in the opinions of John Hermansdorfer, M.D., Plaintiff's treating orthopedist at Atlantic Orthopedic Group. (R. 30) Dr. Hermansdorfer's records offer the following summary:

> The patient was evidently pulling a very heavy pool pump off a shelf in a box when the box tore causing the patient's right arm to take a violent twist pulling he weight of the entire pump  He had immediate onset of pain in his shoulder and at the base of his neck.  He was treated by Dr. Robinson and found to have a rotator cuff tear.  He underwent surgery on 11-15-13 with arthroscopy and rotator cuff repair, however, unfortunately somehow he re-tore his rotator cuff.  He was sent to me for consultation because Dr. Robinson did not think he could do anything more for the patient.

(R. 583) The orthopedist then made his own assessment: "The patient has had a severe trauma to his right shoulder and brachial plexus area.  He has an upper trunk injury causing significant motor nerve damage of the C6-7 distribution including the suprascapular nerve, musculocutaneous nerve and axillary nerve.  Additionally he has a rotator cuff tear which was fixed once but re-tore." (R. 575)  He determined in April 2014, that Plaintiff was unable to use his right arm for any type of work; he performed Plaintiff's second rotator cuff surgery on May 20, 2014. (*Id.*)  At a follow-up appointment in July 2014, Plaintiff was "doing well" but could not yet use his right arm for work purposes. (R. 581)  Physical therapy notes from this time period indicate Plaintiff "made good progress." (R. 615)  He was "demonstrating less guarding and has decreased reports of pain.  Pt is progressing well along post surgical guidelines.  Pt will benefit from continued therapy to regain functional ROM and restore his strength and function." (*Id.*)

In August 2014, Dr. Hermansdorfer released Plaintiff to "very light duty with the right upper extremity." (R. 580) The orthopedist completed a Work Ready Form in September 2014, that indicates Plaintiff could bend, grasp, kneel, pull, sit, squat, stand, twist, and walk, but could not reach overhead and could only lift and carry up to five pounds. (R. 614) In October 2014, Dr. Hermansdorfer released Plaintiff to "light duty" work, a finding he repeated at Plaintiff's November 2014, appointment. (R. 579, 626) Plaintiff did not obtain full range of motion following Dr. Hermansdorfer's second rotator cuff repair, and Plaintiff continued to experience pain and decreased strength (as Dr. Hermansdorfer observed, Plaintiff's had "excellent passive motion but he can only elevate about 50 or 60 degrees in forward flexion or abduction," R. 578). It was not until March 2017, however, that Dr. Zhuge opined (after reviewing Plaintiff's most recent cervical spine x-rays and MRI, R. 943) that Plaintiff's spinal stenosis rendered him unable to work.

Next is Plaintiff's argument that the ALJ erred in disregarding the opinions of pain management doctor Robert Dowdell, M.D., who treated Plaintiff from March through June 2015. The ALJ did not mention Dr. Dowdell's records in her opinion, nor was she required to so long as I can conclude from her decision that she properly considered Plaintiff's condition as a whole. *See Dyer*, 395 F.3d at 1211; *Wilkinson v. Comm'r of Soc. Sec.*, 289 F. App'x 384, 386 (11th Cir. 2008). Dr. Dowdell determined in March 2015, on a worker's compensation form, that Plaintiff could not perform even sedentary work. (R. 962) Plaintiff told Dr. Dowdell about his neck pain, characterizing it as "intermittent, moderate in intensity." (R. 1017) He also had "severe right radicular upper extremity pain" but had "some relief with rest and medication." (*Id.*) Dr. Dowdell noted, "[a]n EMG was performed by Dr. Rivera that reportedly revealed improvement of the patient's nerve injury." (*Id.*) The doctor prescribed Plaintiff his pain medications, administered epidural injections, and saw him at regular follow-up appointments. Plaintiff reported his pain

9

level was between two and five out of ten with medication. This comports with Dr. Dowdell's statement that Plaintiff "has done well with medical management for chronic pain demonstrating increased function and ability to perform ADLs." (R. 960) Dr. Dowdell's records confirm Plaintiff suffered from chronic shoulder and neck pain and had decreased range of motion and decreased strength in his right deltoid and biceps muscles. But, considering the medical records summarized above, Dr. Dowdell's treatment does not undermine the ALJ's conclusion that Plaintiff could perform light work prior to March 31, 2017.

Finally, Plaintiff contends the ALJ erred when she assigned less weight to the opinion of consultative psychologist Nancy MacKay, Psy.D., than she assigned to non-examining psychologists James Mendelson, Ph.D. and Robert Hodes, Ph.D. Dr. MacKay evaluated Plaintiff in March 2015. Plaintiff told her that he suffers from major depression, anxiety attacks, and pain but that "[c]onstant pain is number one. Some mornings I almost can't walk because I have major arthritis in my spine and back. Major depression. Some days anxiety lasts for hours." (R. 855) Dr. MacKay concluded:

> Mr. Conley appears to have a degree of social discomfort that may lead to difficulty relating appropriately with co-workers, the public, and supervisors. He is likely to be oversensitive to constructive criticism in interaction with supervisors. He is likely to have marked difficulty making appropriate work-related decisions. Somatic complaints may lead to problems with punctuality or absenteeism. Mr. Conley appears to be better suited to employment opportunities that allow him to be somewhat independent.

(R. 859) The ALJ summarized Dr. MacKay's evaluation at length but gave it "less weight" than Drs. Mendelson and Hodes's opinions. Dr. Hodes, a non-examining psychologist, reviewed Plaintiff's mental health history for the agency's initial determination and opined Plaintiff's mental health symptoms were well controlled with medications. (R. 118-19) At the reconsideration level, Dr. Mendelson reached the same conclusion in March 2015. (R. 136) These psychologists stressed

that even though Plaintiff alleged he suffers from PTSD and OCD on agency forms, his psychiatric records make no mention of these conditions. Dr. Mendelson wrote, "Clt alleges many more [symptoms] in the function and [symptoms] forms that are not credible given the [Medical Evidence of Record]. Alleges 30 anxiety attacks a month not referenced in MER. Alleges history of PTSD, MDD, OCD, and suicidal history with no attempts in recent years. These allegations were not reported to current providers when taking his psychiatric history (see Circle of Care and neurologist) and are not considered current or credible." (R. 136)

To the ALJ, this opinion is "grounded in the record" more than Dr. MacKay's, which was "speculative given her heavy reliance on the claimant's presentation at a one-time examination where she considered the claimant to be only a 'fair' historian." (R. 29) Indeed, Plaintiff's mental health providers at Circles of Care reported – at appointments in August, September, and November 2016 – that Plaintiff's mental status was within normal limits when he complied with his medication. (*See* R. 925, 927, 929)

At this point in my analysis, I reiterate that, when reviewing an ALJ's decision, my job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words, I am not permitted to reweigh the evidence or substitute my own judgment for that of the ALJ even if I find the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Considering this, there is substantial evidentiary support for the ALJ's decision that Plaintiff could perform light duty work prior to March 31, 2017.

11

*D.     Conclusion*

For the reasons stated above, it is ORDERED:

    (1) The ALJ's decision is AFFIRMED; and

    (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on October 31, 2019.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE